[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Reinheimer*, Slip Opinion No. 2020-Ohio-3941.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-3941

DISCIPLINARY COUNSEL *v.* REINHEIMER.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Reinheimer*, Slip Opinion No. 2020-Ohio-3941.]

*Attorneys—Misconduct—Alleging that attorney violated one division of Prof.Cond.R. 1.4 based on specifically alleged facts failed to place him on fair notice that he may have violated other, uncharged divisions of rule based on slightly different facts, especially when the uncharged divisions were not raised until after close of evidence and parties had not consented to hearing on those uncharged violations and unalleged facts—Cause dismissed.*

(No. 2019-1742—Submitted April 28, 2020—Decided August 6, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2019-021.

_____

**Per Curiam.**

**{¶ 1}** Respondent, James Louis Reinheimer, of Port Clinton, Ohio, Attorney Registration No. 0059231, was admitted to the practice of law in Ohio in 1992. The Board of Professional Conduct recommends that we publicly reprimand him for violations of two divisions of an ethical rule that were not charged in the disciplinary complaint against him. For the reasons explained below, we conclude that Reinheimer did not have fair notice of those charges, and we therefore dismiss this case.

## Procedural history

**{¶ 2}** In a May 2019 complaint, relator, disciplinary counsel, alleged that while representing a client in a civil defamation action, Reinheimer violated three professional-conduct rules: Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), and 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter). Reinheimer denied the charges, and the matter proceeded to a hearing before a three-member panel of the board. After the close of the evidence, the panel unanimously dismissed the alleged violations of Prof.Cond.R. 1.1 and 1.3 for lack of sufficient evidence.

**{¶ 3}** During closing arguments, relator suggested that the panel was not limited to finding a violation of Prof.Cond.R. 1.4(a)(3)—the sole remaining charge—and that the panel could find a violation of any division of Prof.Cond.R. 1.4.[1] Relator, however, mentioned only one other division—Prof.Cond.R. 1.4(a)(1) (requiring a lawyer to inform a client of any decision or circumstance requiring the client's informed consent).

---

1. Prof.Cond.R. 1.4, entitled "Communication," regulates an attorney's communication with his or her client and includes divisions ranging from requiring an attorney to keep a client reasonably informed about the status of a matter (Prof.Cond.R. 1.4(a)(3)), to requiring a lawyer to consult with a client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance prohibited by the professional-conduct rules or other law (Prof.Cond.R. 1.4(a)(5)), to requiring a lawyer to inform a client if the lawyer does not maintain professional-liability insurance (Prof.Cond.R. 1.4(c)).

{¶ 4} After the hearing, Reinheimer moved to dismiss the case, arguing that relator had failed to prove the charged violation of Prof.Cond.R. 1.4(a)(3) and that any finding that he violated Prof.Cond.R. 1.4(a)(1) would infringe on his due-process rights. In the alternative, Reinheimer requested an opportunity to submit a written summation on the facts and law concerning a violation of Prof.Cond.R. 1.4(a)(1) or any other division of Prof.Cond.R. 1.4. The panel denied Reinheimer's motion to dismiss and ordered briefing on three issues: (1) the sufficiency of the evidence to support the charged Prof.Cond.R. 1.4(a)(3) violation, (2) the panel's authority to "grant Relator's oral motion to amend the complaint to conform to the evidence presented at the hearing," and (3) the sufficiency of the evidence to establish violations of Prof.Cond.R. 1.4(a)(1) and 1.4(b) (requiring a lawyer to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation). Relator had neither alleged a violation of Prof.Cond.R. 1.4(b) in the complaint nor mentioned that particular division at Reinheimer's disciplinary hearing.

{¶ 5} Upon consideration of the parties' briefs, the panel unanimously dismissed the charged violation of Prof.Cond.R. 1.4(a)(3) for lack of sufficient evidence. The panel, however, granted relator's purported motion to amend the complaint, found that Reinheimer violated Prof.Cond.R. 1.4(a)(1) and 1.4(b), and recommended that he be publicly reprimanded for those violations. The board issued a report adopting the panel's findings of misconduct and recommended sanction.

{¶ 6} Reinheimer has filed two objections to the board's report. First, he asserts that the board denied him due process by finding that he violated ethical rules that were neither charged in the complaint nor mentioned until after the close of the evidence. Second, he argues that the evidence fails to establish a violation of Prof.Cond.R. 1.4(a)(1) or 1.4(b). Relator has filed an answer brief arguing that

Reinheimer had a meaningful opportunity to present evidence in his defense and that the evidence supports the board's misconduct findings.

**Analysis**

{¶ 7} In attorney-discipline proceedings, a lawyer accused of misconduct is "entitled to procedural due process, which includes fair notice of the charge." *In re Ruffalo*, 390 U.S. 544, 550, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), citing *In re Oliver*, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948). In *Ruffalo*, an Ohio attorney had no notice that certain conduct would be considered a sanctionable offense until, after he and another witness had testified at the attorney's disciplinary hearing, the board, then known as the Board of Commissioners on Grievances and Discipline, added a new charge based on the testimony. We indefinitely suspended the attorney, and the United States Court of Appeals for the Sixth Circuit disbarred him from practice in that court based on our finding of misconduct. The attorney thereafter appealed the Sixth Circuit's decision to the United States Supreme Court, which held that the federal court had erred in relying on our decision because the attorney lacked fair notice of the charge against him. The Supreme Court explained: "The charge must be known before the proceedings commence. [The proceedings] become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused. He can then be given no opportunity to expunge the earlier statements and start afresh." *Id.* at 551. The "absence of fair notice" as to the reach of the charges, the court concluded, deprives an attorney of procedural due process. *Id.* at 552.

{¶ 8} Applying these principles, we have held that the board's addition of misconduct charges after the record is closed and without providing fair notice to the attorney "fails to pass the test of procedural due process." *Disciplinary Counsel v. Simecek*, 83 Ohio St.3d 320, 322, 699 N.E.2d 933 (1998), citing *Ruffalo*. Similarly, the board may not premise a rule violation on an attorney's dishonest conduct during the disciplinary proceedings unless the complaint alleged that

misconduct. *Cincinnati Bar Assn. v. Sigalov*, 133 Ohio St.3d 1, 2012-Ohio-3868, 975 N.E.2d 926, ¶ 47 ("under *Ruffalo* and *Simecek*, the requisite notice [is] lacking" in such circumstances). Nor may the board base a rule violation on factual allegations and a theory raised for the first time at the disciplinary hearing. *Cincinnati Bar Assn. v. Wiest*, 148 Ohio St.3d 683, 2016-Ohio-8166, 72 N.E.3d 621, ¶ 16 (the relator's failure to allege facts that put the respondent on notice that certain conduct would be at issue is "fatal to [the] relator's belated claim"); *see also Cuyahoga Cty. Bar Assn. v. Judge*, 96 Ohio St.3d 467, 2002-Ohio-4741, 776 N.E.2d 21, ¶ 4 ("imposing punishment for an uncharged violation is untenable").

{¶ 9} Here, the board found that Reinheimer violated two uncharged divisions of Prof.Cond.R. 1.4 based on facts that were not alleged in relator's complaint. Relator's complaint alleged that Reinheimer violated Prof.Cond.R. 1.1, 1.3, and 1.4(a)(3) by refusing to engage in discovery or prepare a defense in his client's defamation case, failing to respond to a motion for summary judgment or to notify his client about the motion, and—after the court awarded summary judgment against his client—failing to notify her about two damages hearings or to appeal the adverse judgment.

{¶ 10} The panel dismissed all three of those alleged rule violations for lack of sufficient evidence. In its report, the panel noted that Reinheimer "testified candidly" about his trial strategy to allow summary judgment to be granted against his client and that several factors had contributed to that tactical decision, including the client's reluctance to testify before a jury and Reinheimer's belief that the judge would award only nominal damages. The panel took "no issue" with Reinheimer's strategy but found that he committed the two uncharged violations because he had failed "to properly discuss the strategy" with his client and to "carefully advise her that such a drastic tactical measure could result in a monetary judgment against her so that she could make a reasonably informed decision on the issue." The panel

also concluded that Reinheimer had failed to have his client acknowledge in writing that she was aware of his strategy and had consented to it.

{¶ 11} Reinheimer, however, was not charged with failing to discuss his trial strategy with, or thoroughly explain that strategy to, his client so that she could give informed consent or make an informed decision about the strategy. He was charged with neglecting his client's case and failing to notify her of the summary-judgment and damages proceedings. In short, relator's theory of the case changed after the presentation of the evidence, and the panel added the new charges based on the hearing testimony even though Reinheimer was not on notice that those new alleged rule violations would be issues at the hearing. Reinheimer argues that he was denied the opportunity to engage in discovery about or defend against the two new charges and that if relator had initially charged those rule violations, he would have litigated the case differently. As in *Ruffalo*, "no one knows" how the charges would have been met if they had been included in the complaint, but the "absence of fair notice as to the reach of the grievance procedure and the precise nature of the charges deprived" Reinheimer of procedural due process. 390 U.S. at 551-552, 88 S.Ct. 1222, 20 L.Ed.2d 117.

{¶ 12} None of the arguments raised in the board's report or in relator's answer brief require a different result. For example, the board, citing Civ.R. 15, concluded that the panel chair had granted "Relator's oral motion at the close of evidence to amend the complaint to conform to the evidence and consider additional divisions of Prof.Cond.R. 1.4 that were not charged." We find two problems with the board's conclusion.

{¶ 13} First, relator said nothing at the hearing about amending the disciplinary complaint. During closing arguments, relator suggested that the panel could find a violation of any division of Prof.Cond.R. 1.4 because Reinheimer was "on notice that there was a failure to communicate in this case." Relator may have been arguing—as asserted in his answer brief—that the Prof.Cond.R. 1.4(a)(3)

charge put Reinheimer on notice of alleged violations of other divisions of Prof.Cond.R. 1.4 relating to an attorney's communications with his client. Indeed, relator now argues that Reinheimer committed a "single violation of Prof.Cond.R. 1.4" and that it is "not accurate" to say that the panel found "wholly new violations" of that rule. But if the panel did not find that Reinheimer committed "new violations," then there was no reason to amend the complaint. Nevertheless, more than two weeks after the hearing, the panel interpreted relator's closing argument as an oral motion to amend the complaint and then granted that motion.

**{¶ 14}** Second, even assuming that relator had moved to amend the complaint and that Civ.R. 15(B) applies, relator failed to meet the requirements of the civil rule.[2] Civ.R. 15(B) allows amendments of the pleadings to conform them to the evidence and provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." The purpose of the rule is to ensure that cases are "decided on the issues actually litigated at trial," and the rule therefore applies only when the unpleaded issue was "tried by either the 'express or implied consent of the parties.' " *State ex rel. Evans v. Bainbridge Twp. Trustees*, 5 Ohio St.3d 41, 44, 448 N.E.2d 1159 (1983), quoting Civ.R. 15(B).

**{¶ 15}** Because Reinheimer did not expressly consent to a hearing on the uncharged rule violations, the question is whether the parties impliedly consented. In making that determination, we consider the following factors:

2. Gov.Bar R. V(27)(A) requires a hearing panel to follow the Ohio Rules of Civil Procedure whenever practicable unless a specific provision of the Rules for the Government of the Bar provides otherwise. Gov.Bar R. V(12)(E) addresses amendments to a disciplinary complaint; although the rule does not specifically address amendments to conform a complaint to the evidence, hearing panels have amended complaints for that purpose. *See, e.g., Trumbull Cty. Bar Assn. v. Roland*, 147 Ohio St.3d 274, 2016-Ohio-5579, 63 N.E.3d 1200, ¶ 8 (noting that at the hearing, the relator had been permitted to amend the complaint to conform it to the evidence by adding allegations that the respondent violated additional rules).

whether they recognized that an unpleaded issue entered the case; whether the opposing party had a fair opportunity to address the tendered issue or would offer additional evidence if the case were to be tried on a different theory; and, whether the witnesses were subjected to extensive cross-examination on the issue.

*Id.* at paragraph one of the syllabus. "An implied amendment of the pleadings under Civ.R. 15(B) will not be permitted where it results in substantial prejudice to a party." *Id.* And "implied consent is not established merely because evidence bearing directly on an unpleaded issue was introduced without objection; it must appear that the parties understood the evidence was aimed at the unpleaded issue." *Id.* at paragraph two of the syllabus.

{¶ 16} Based on our review of the record, we do not find that the parties believed that the sufficiency of Reinheimer's explanation of his trial strategy was an issue at the disciplinary hearing. Reinheimer testified that his client was aware of his trial strategy and understood it. Although relator questioned the client about whether Reinheimer had discussed with her his strategy for the damages hearing, a panel member—not relator—questioned the client about whether Reinheimer had specifically discussed his trial strategy not to oppose summary judgment. It is unreasonable to conclude that both parties understood that this testimony— significant portions of which were elicited by a panel member—was aimed at proving uncharged rule violations. Further, Reinheimer argues that if he had known that those particular communications with his client were a contested issue, he would have challenged her credibility on that topic, rather than focus his defense on the three charged rule violations. Under these circumstances, Reinheimer cannot be said to have given his implied consent to amend the complaint to add the new charges.

{¶ 17} To support its recommendation, the board also cited Gov.Bar R. V(10)(E)(1)(a), which requires a disciplinary complaint to include allegations of specific misconduct and rule citations, "provided that neither the panel nor the Board shall be limited to the citation to the disciplinary rule in finding violations based on all the evidence if the respondent has fair notice of the charged misconduct." The board concluded that Reinheimer had notice of the "amended rule violations" because they were "so similar in nature and character to the charged violation that they [did] not substantially change the originally charged misconduct" and that charging a specific division of Prof.Cond.R. 1.4 is not required to put a respondent on notice that his communication with his client is at issue.

{¶ 18} We disagree. Although all divisions of Prof.Cond.R. 1.4 relate to an attorney's communications with his or her client, each division is distinct and requires or prohibits certain conduct. Alleging that Reinheimer violated one division based on specifically alleged facts failed to place him on fair notice that he may have violated other divisions of Prof.Cond.R. 1.4 based on slightly different facts, especially when the uncharged divisions were raised after the close of the evidence and the parties had not consented to a hearing on those uncharged violations and unalleged facts. Although there may be circumstances when the allegations in a complaint put a respondent on fair notice of uncharged violations of Prof.Cond.R. 1.4, this is not one of those cases.

{¶ 19} Considering that we are precluded from reviewing the panel's dismissal of the three charged rule violations, *Cincinnati Bar Assn. v. Fernandez,* 147 Ohio St.3d 329, 2016-Ohio-5586, 65 N.E.3d 724, ¶ 13, and that Reinheimer did not have fair notice of the uncharged violations, we sustain his first objection and dismiss this case.

Cause dismissed.

O'CONNOR, C.J., and FRENCH, FISCHER, and DONNELLY, JJ., concur.

KENNEDY, J., concurs in judgment only, with an opinion.

FISCHER, J., concurs, with an opinion.

DEWINE and STEWART, JJ., concur in judgment only.

_____

**KENNEDY, J., concurring in judgment only.**

{¶ 20} Because all the charges actually alleged in the complaint in this case were dismissed for insufficient evidence, I concur in the court's judgment dismissing this attorney-discipline matter brought against respondent, James Louis Reinheimer. I write separately to emphasize that imposing discipline for violations of ethics rules that were not alleged in the complaint deprives the disciplined attorney of due process.

{¶ 21} Relator, disciplinary counsel, filed a complaint alleging that Reinheimer had violated three professional-conduct rules: Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), and 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter). These charges were based on allegations that Reinheimer refused to engage in discovery or prepare a defense in his client's defamation case, did not respond to a motion for summary judgment, and—after the court awarded summary judgment against the client—failed to notify her about two damages hearings or to appeal the adverse judgment. At the hearing before the panel of the Board of Professional Conduct, Reinheimer rebutted those charges by testifying that he had pursued a trial strategy in which he purposefully allowed summary judgment to be entered against his client to protect her from testifying at trial based on his belief that the trial judge would impose only nominal damages against her.

{¶ 22} Importantly here, the panel dismissed all the charges alleged in the complaint for lack of sufficient evidence. Nonetheless, it used Reinheimer's admissions at the hearing to find that he had violated other professional-conduct

rules: Prof.Cond.R. 1.4(a)(1) (requiring a lawyer to inform a client of any decision or circumstance requiring the client's informed consent) and 1.4(b) (requiring a lawyer to explain a matter to the extent reasonably necessary to permit a client to make informed decisions regarding the representation). Even though the misconduct was not charged in the complaint, the panel found that Reinheimer had failed to "carefully advise [his client] that such a drastic tactical measure could result in a monetary judgment against her so that she could make a reasonably informed decision on the issue" and had failed to have her confirm her informed consent in writing. The board adopted those findings and recommends that we publicly reprimand Reinheimer.

{¶ 23} In *In re Ruffalo*, the United States Supreme Court described the contours of due process as it applies in attorney-discipline proceedings and explained that "[the] absence of fair notice as to the reach of the grievance procedure and the precise nature of the charges deprived [the attorney in that case] of procedural due process." 390 U.S. 544, 552, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). The court stated that attorney-disciplinary proceedings "are adversary proceedings of a quasi-criminal nature" and that therefore, "[t]he charge must be known before the proceedings commence." *Id*. at 551. Disciplinary proceedings "become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused. [The attorney] can then be given no opportunity to expunge the earlier statements and start afresh." *Id*.

{¶ 24} The court's holding in *Ruffalo* was plain: the complaint's charges of professional misconduct against an attorney may not be amended during or after a disciplinary hearing based on the testimony given by the attorney in his or her defense.

{¶ 25} Our decisions following *Ruffalo* have been equally unequivocal in holding that an ethical violation may not be found based on uncharged misconduct. We held in *Disciplinary Counsel v. Simecek* that "the addition of misconduct

charges after the record is closed * * * fails to pass the test of procedural due process." 83 Ohio St.3d 320, 322, 699 N.E.2d 933 (1998). In *Cuyahoga Cty. Bar Assn. v. Judge,* we explained that "imposing punishment for an uncharged violation is untenable" and we noted that we had "denounced" the practice of finding violations of the professional-conduct rules not alleged in the complaint "as a violation of due process." 96 Ohio St.3d 467, 2002-Ohio-4741, 776 N.E.2d 21, ¶ 4.

{¶ 26} We held in *Columbus Bar Assn. v. Farmer* that the complaint in that case had not given the attorney sufficient notice of allegations that he attempted to mislead disciplinary counsel when it had accused the attorney of misleading only his clients: "Without such prior notice, these claims cannot form the basis for adjudicating additional [professional] misconduct," we explained. 111 Ohio St.3d 137, 2006-Ohio-5342, 855 N.E.2d 462, ¶ 25. In *Cincinnati Bar Assn. v. Sanz,* we simply stated, "Because [the] relator's complaint did not charge [the] respondent with violating Gov.Bar R. V(4)(G) [requiring a lawyer to cooperate in a disciplinary investigation], we reject the board's finding that [the] respondent has violated that rule." 128 Ohio St.3d 373, 2011-Ohio-766, 944 N.E.2d 674, ¶ 7. And adhering to this precedent in *Cincinnati Bar Assn. v. Sigalov,* we explained that "[a]dditional charges of misconduct for violating Prof.Cond.R. 8.4(c) cannot be premised on an attorney's misleading disciplinary authorities during the investigation or proceedings unless the complaint makes such an allegation." 133 Ohio St.3d 1, 2012-Ohio-3868, 975 N.E.2d 926, ¶ 46.

{¶ 27} Most recently, we reaffirmed the principle that " '[t]he charge must be known before the proceedings commence' " in *Cincinnati Bar Assn. v. Wiest,* 148 Ohio St.3d 683, 2016-Ohio-8166, 72 N.E.3d 621, ¶ 15, quoting *Ruffalo,* 390 U.S. at 551, 88 S.Ct. 1222, 20 L.Ed.2d 117. In that case, the attorney had been charged with ethical violations for using confidential client information to purchase stock; the board found, and we agreed, that this conduct involved dishonesty, fraud,

deceit, or misrepresentation and therefore could be the basis for discipline. But the board also found that the attorney had committed professional misconduct by disclosing confidential client information to the Securities and Exchange Commission even though that misconduct had not been alleged in the complaint. In this court, the attorney argued that the "relator's eleventh-hour change in the theory of its case deprived him of due process." *Wiest* at ¶ 14.

{¶ 28} We agreed, noting that the relator had failed to allege any facts that would have put the attorney on notice that he would be expected to defend his disclosure of information to the commission, and we therefore rejected the relator's claim that the attorney committed violations based on that conduct. *Id*. at ¶ 16. We said, "The 'absence of fair notice as to the reach of the grievance procedure and the precise nature of the charges' deprives an attorney facing discipline of procedural due process." *Id*. at ¶ 15, quoting *Ruffalo* at 552. The relator's failure to allege that the attorney illegally revealed client confidences to the commission "prove[d] fatal to [the] relator's belated claim" that that conduct violated the Rules of Professional Conduct. *Id*. at ¶ 16.

{¶ 29} Applying our well-settled law in the case before us, the correct outcome is apparent. We cannot uphold findings of violations that were not first alleged in the complaint. In this case, the board found that Reinheimer committed uncharged misconduct, but "the addition of misconduct charges after the record is closed * * * fails to pass the test of procedural due process," *Simecek*, 83 Ohio St.3d at 322, 699 N.E.2d 933; *accord Attorney Grievance Comm. v. Lang*, 461 Md. 1, 59, 191 A.3d 474 (2018) ("We shall not find a violation where none was charged"); *In re Disciplinary Proceedings Against Winkel*, 363 Wis.2d 786, 2015 WI 68, 866 N.W.2d 642, ¶ 39 ("There is no dispute that Attorney Winkel's testimony during the disciplinary hearing would not permit a separate, new misconduct finding in this proceeding * * *"); *Iowa Supreme Court Attorney Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 536 (Iowa 2013), fn. 2 ("the board must disclose the charges

against an attorney before the proceedings commence. * * * The failure to do so deprives the attorney of procedural due process").

{¶ 30} The board's reliance on Gov.Bar R. V(10)(E)(1)(a) is misplaced. That rule requires a disciplinary complaint to include allegations of specific misconduct and rule citations, yet it states that "neither the panel nor the Board shall be limited to the citation to the disciplinary rule in finding violations based on all the evidence if the respondent has fair notice of the charged misconduct." As explained above, however, our caselaw holds that "fair notice" means that the misconduct must be alleged in the disciplinary complaint, and the Rules for the Government of the Bar cannot abrogate our holdings regarding what process is due to an attorney facing discipline.

{¶ 31} This court addressed a former rule similar to Gov.Bar R. V(10)(E)(1)(a) in *Judge*, 96 Ohio St.3d 467, 2002-Ohio-4741, 776 N.E.2d 21. We acknowledged in *Judge* that "Section 1(A) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline purports to allow the board, with sufficient evidence, to find violations of Disciplinary Rules not cited in the complaint." *Id*. at ¶ 4. However, we rejected out of hand the proposition that an attorney could be disciplined for uncharged misconduct under this rule, noting that we had "specifically denounced this practice as a violation of due process." *Id*.

{¶ 32} For the same reasons, the board in this case could not amend the complaint after the hearing to conform the allegations to the evidence pursuant to Civ.R. 15(B). Even if relator had moved to amend its complaint—and it did not— the United States Supreme Court in *Ruffalo* has recognized that due process prohibits a disciplinary authority from amending the allegations of the complaint during or after a disciplinary hearing based on the testimony given by the attorney in his or her defense. Yet that is precisely what the board has purported to do here.

{¶ 33} It is not necessary to go any further to resolve this case. Whether Civ.R. 15(B) applies generally in disciplinary proceedings is not an issue. I therefore would not, as the majority does, assume for the sake of argument that Civ.R. 15(B) applies in this case just to knock down the board's conclusions and relator's arguments, because doing so results in nothing more than an advisory opinion suggesting that Civ.R. 15(B) does in fact apply in disciplinary proceedings. *See* majority opinion at ¶ 14 and fn. 2.

{¶ 34} Due process precluded the board from amending the complaint to add new charges of professional misconduct after Reinheimer testified. To go beyond that narrow holding even though it is unnecessary to do so contravenes the " 'cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more,' " *State ex rel. LetOhioVote.org v. Brunner*, 123 Ohio St.3d 322, 2009-Ohio-4900, 916 N.E.2d 462, ¶ 51, quoting *PDK Laboratories, Inc. v. United States Drug Enforcement Administration*, 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J., concurring in part and concurring in judgment).

{¶ 35} In closing, it is important to note that the Rules for the Government of the Bar provide disciplinary counsel and certified grievance committees ample authority to fully investigate cases prior to bringing a complaint and before disciplinary hearings are held. The rules also demand that attorneys cooperate in those investigations. But disciplinary hearings remain adversarial proceedings in which attorneys have the due-process right to know before the hearing the charges they face so that they may decide whether to submit to discipline or contest those charges and seek full exoneration.

{¶ 36} Here, Reinheimer chose to defend against the charges that relator brought. Then, after he testified and after the hearing, the board amended the complaint to allege brand new charges, like pulling a rabbit from a magician's hat. That is the trap condemned by the Supreme Court in *Ruffalo*. That is the practice

barred by our precedent.  And that is the reason I concur in the court's judgment dismissing the case.

_____

**FISCHER, J., concurring.**

{¶ 37} I respectfully concur in the court's decision.

{¶ 38} Gov.Bar R. V(10)(E)(1)(a) provides that a complaint filed with the Board of Professional Conduct must contain "[a]llegations of specific misconduct including citations to the rules allegedly violated by the respondent."  That provision has an exception, however: "neither the panel nor the Board shall be limited to the citation to the disciplinary rule in finding violations based on all the evidence if the respondent has fair notice of the charged misconduct."

{¶ 39} Allowing the panel and board to look beyond the confines of the complaint at appropriate times is a good policy, as it aids this court in fulfilling its constitutional duty to regulate all matters related to the practice of law.  *See* Article IV, Section 2(B)(1)(g), Ohio Constitution.  It also better enables us to meet the important goal of protecting the public from lawyers who are unworthy of trust and confidence, the primary purpose of the disciplinary process.  *See Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 10.

{¶ 40} Of course, the Supreme Court of the United States has made it clear that lawyers accused of misconduct have a due-process right to fair notice of any charges being brought against them.  *In re Ruffalo,* 390 U.S. 544, 550, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968).  In light of this constitutional protection, Gov.Bar R. V(10)(E)(1)(a) properly provides that the panel and board may look beyond the confines of the complaint only when the respondent has "fair notice" of the additional charges.

{¶ 41} I do not disagree with the court's conclusion that based on the facts before us, respondent, James Louis Reinheimer, did not have the fair notice required by Gov.Bar R. V(10)(E)(1)(a) and *Ruffalo* that he faced charges of

violating Prof.Cond.R. 1.4(a)(1) and 1.4(b). I accordingly concur in the court's judgment dismissing the case.

{¶ 42} Although I agree with the court's disposition of the case, I wish to note the possibility that if violations of Prof.Cond.R. 1.4(a)(1) and 1.4(b) were not properly alleged—and thus never properly at issue and not able to have been litigated—those possible claims may still exist. And given that there is also no statute of limitations on disciplinary actions, *see Cincinnati Bar Assn. v. Young*, 89 Ohio St.3d 306, 315, 731 N.E.2d 631 (2000), citing *Columbus Bar Assn. v. Teaford*, 6 Ohio St.2d 253, 255, 217 N.E.2d 872 (1966), it is possible that because the violations were never alleged, with proper notice, they may still be charged.

{¶ 43} Taking no position, I ask rhetorically: may relator consider whether he wishes to charge the violations that this court today concludes were improperly found by the board? Relator might or might not succeed in "retrying" those counts, after giving proper notice to Reinheimer. Given our duty to protect the public, I think it is appropriate to consider all available options, within constitutional limits, for ensuring that attorneys who have engaged in misconduct answer for that misconduct in the disciplinary process.

{¶ 44} For these reasons, I concur.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Audrey E. Varwig, Assistant Disciplinary Counsel, for relator.

Coughlan Law Firm, L.L.C., and Jonathan E. Coughlan, for respondent.

_____